Mr. Fishman, good morning. You may proceed. Good morning. May it please the court, my name is Randy Fishman. I'm from Memphis, Tennessee. I'm here, I represent Larry Moss, who bought four guitars from a memorabilia hustler, for lack of a better word, Robert Johnson. These four guitars were the subject of a lawsuit in Shelby County, Tennessee, in the Chancery Court. Subsequently, there was the instant lawsuit that we're here on appeal for in South Dakota in the District Court. The issue on appeal is the courts, the District Court, failed to recognize Rex Chutakata as title to the guitars had been decided in Tennessee in the Chancery Court. And there's three issues that I want to address. The District Court talked about the Chancery Court order and indicated that the finding of the Chancellor in Tennessee, wherein he found that Moss was the equitable and legal owner of the guitars as of February 12, 2008, was dicta. Dicta, of course, are statements by a court that may not be necessary in order to reach the conclusion that it reached. I respectfully disagree with the court, and the reason being we're dealing with goods, we're dealing with a guitar, and title transfers upon delivery, or when you have a unique identified good under the Uniform Commercial Code as recognized in Tennessee, title can transfer upon contracting. I'm sorry, Your Honor, I can't hear you. Sorry. I don't like talking to this thing because it echoes, but if you can't hear me, I will. I said that finding or holding by the District Court that the finding in the Tennessee court was dicta was just kind of a double down, as I recall, because there was another reason that it wasn't Rex Chutakata, and that is that the museum was not a party. Well, I'm going to talk about privity as well. Okay. The District Court took the position that the National Music Museum was not a party to the litigation. They did not have the opportunity to litigate their claim in the Chancellory Court, and therefore the District Court took the position they were not in privity. I again respectfully disagree. The National Music Museum was well aware of the litigation in Tennessee. We in Tennessee had no jurisdiction to bring them in. They certainly had the opportunity to come, and that is further supported by the motion to abstain that we filed in the District Court in South Dakota, asking that court to refrain from ruling until such time as the... Do they have an obligation to intervene? Well, Your Honor, perhaps they don't, but they don't at their own peril. Can they sit on the sideline and let a ruling go down that could affect their interest as opposed to come in litigating it in Tennessee? Not if there's no bar that's created by the judgment. Well, again, I take issue with the concept that they didn't have the opportunity. That's the word opportunity, and I think they clearly had the opportunity. Well, there's opportunity to litigate. Presumed that you're a party, though. I think there's a second. It's not an independent ground for imposing a bar. It's that you have to be a party and you have to have had an opportunity to litigate the issue, and the first premises isn't present. Well, what the South Dakota court did effectively was just turn the Tennessee judgment on its head. Not only did that court hold that National Museums Inn had title, that court held that Moss never had title, and I submit that race judicata should apply because they are a privy, and I understand Your Honor's question, and I hear you, and I take the position that they had every opportunity and made the choice not to come. They couldn't be compelled to come, but they certainly had the opportunity. I look at the timing issue, the Eighth Circuit court case of industrial credit, which had the proposition that one in privity, you can't be held, an assinee unless they obtained that assignment prior to the litigation, the commencement of litigation or the judgment, but that case likewise, if the court please, recognizes that there are circumstances, and I'll just read the quote, we are mindful that there are conceivably maybe situations where an assinee is in privity to the adjudication to his ass and his rights even though he occupied the status prior to the adjudication, and that brings me to what I call the Laurel and Hardy case, which I think fits the Elvis case rather well. The Laurel and Hardy case came out of New York. It was a district court case. That was a Price case? That's Price versus World Vision, if the court please. The widows of Laurel and Hardy sued to protect the likeness and image of Laurel and Hardy, and that court, there was a subsequent lawsuit when there was an assignment of those rights to another entity, and that court reasoned, which I think is good that they had nothing to assign. The rights for the likeness and image in Laurel and Hardy were exclusively belonged to a fellow named Roach, if I remember the case correctly, and when they made that assignment, they assigned zero because they owned nothing, so that I think answers the question of the timing issue of the privity question and fits the concept that the Eighth Circuit recognized an industrial credit. The South Dakota court never addressed any of the UCC claims and arguments for which the declaratory judgment was brought to begin with, so I would ask the court to reverse the district court, place title in Moss's name, because those UCC arguments, if the court recalls, the title to the guitar came out of a sales donation agreement, and the Elvis guitar, the Martin D35 guitar, was one that was donated to the museum, so therefore, they can't be a buyer in an ordinary course, et cetera, in those arguments from the UCC. If there are no questions, I'll reserve the balance of my time. Is an action for specific performance, is that a standalone cause of action, or is it a remedy for breach of contract? Well, if the court please, the specific performance request works this way. Moss owns the guitar and it was never delivered to him. It was at the Rock and Soul Museum in Memphis. Moss conceded to allow that guitar to stay there. Those type of things, when they're on display somewhere, add to the providence of the piece, and it was good for the providence of the guitar. When that engagement was up, it wasn't there. Johnson had converted it and moved it to Dallas, Texas, and ultimately wound up in the National Music Museum in this sales donation document, where they bought several guitars for a quarter of a million dollars, and this one was Thank you, Your Honor. We'll hear from counsel for the museum. Ms. Hertz, good morning. You may proceed. May it please the court, I represent the National Music Museum. The district court was free to consider the issue of title, and the decision it made was the correct one. The appellant argues that the judgment he obtained in Tennessee precluded any decision on the issue of title in the South Dakota litigation, but there are three reasons that the Tennessee judgment doesn't control. First of all, the portion of the Tennessee judgment addressing the title was dicta. Second, it was issued two years after the museum had obtained the guitar, and third, there is no mandatory joinder rule. Dicta has no preclusive effect under Tennessee law, and in this case, you don't have to decide title in order to conclude that specific performance is the remedy. Title is not a prerequisite for specific performance. If you look to- That Tennessee suit. I believe the counterclaim that Mr. Moss brought was for breach of contract. For which he sought specific performance. Yes, Your Honor. And then the dicta came in later. Wasn't that on some kind of a motion? Well, Your Honor, where the dicta came in, there is actually a section quoted in the district courts June 2017 opinion when after the Tennessee court issued its oral ruling in this matter, counsel for Mr. Moss said, you know, I believe the exact quote is, this is going to be a little tricky for me because this order would be submitted to the court in South Dakota, so I want to make certain I get the order in a fashion that I need it to be if the court please. So it was sort of an after the fact or after the suit request to add that? I don't know if the specific performance was added, but that particular, shall we say, aspect relating to title was effectively an afterthought on the Tennessee litigation. As far as you know from the record, was there any other pleadings or argument on that particular issue or was it, is all we have that, what you just read, that little bit about requesting it to be placed in the opinion? I apologize, Judge. My specific memory of the entire contents of the Tennessee transcript is perhaps not as good as it should be, but to my recollection, there was no specific debate, shall we say, over the issue of title and when delivery occurred. However, I do believe the Tennessee transcript has been submitted for the court's consideration. As that statement that the district court made in its June opinion makes clear, this part of the judgment was nothing more than an attempt to preempt a decision in second reason that the South Dakota court was free to decide the issue of title was because there is a lack of privity here. Moss asserts that the Tennessee judgment has to control because it talks about title before the transfer to the museum. That's circular reasoning. Basically, his argument is that the judgment is binding because it's binding. Privity doesn't depend on the content of the judgment. As the Supreme Court stated in Postal Telegraph, privity means that the grantee takes the property with the burden of the judgment. Again, it's not about what the judgment says. It's about when the judgment happens. To go back to the old first-year property analogy, whether it's part of the bundle of rights at the time of the transfer from grantor to grantee, and you can't transfer a judgment that doesn't exist. Frankly, this is the only conclusion that makes logical sense. Unless the judgment concerns something that happens before the transfer, the first owner wouldn't be the proper defendant in the judgment claim raised due to CADA. Appellant has brought up the Price case, and unfortunately, that case does not help the appellant because it involved a license rather than a complete transfer of the property affected by the judgment. The defendants in the Roach case, which was proffered as raised due to CADA and Price, claim that they own the rights to the names and likenesses of Laurel and Hardy, and they granted a license to the Price defendants to use those names and likenesses for a TV show. Granting someone the license to use your property is different than giving them the property. For example, if I had a patent, I could give somebody a license to manufacture a product, but I could still keep the patent. In effect, the defendants in Roach were saying, here, you can use our property or this aspect of our property for a limited purpose. They weren't giving the Price defendants everything they had. In other words, when the judgment proffered as raised due to CADA came down, they still held an interest in the property. This, it would be more like if Mr. Johnson had lent the guitar to the museum, you know, some sort of a loan agreement as opposed to actually transferring it to the museum. But Mr. Johnson didn't lend the guitar. He gave the museum title. He retained nothing. And when the judgment came down in 2014 in Tennessee, Mr. Johnson had nothing. Based on that, there can be no privity, and therefore the Tennessee judgment can have no effect. As to whether the museum should have joined in the Tennessee litigation, well, joinder is not mandatory here. The cases cited by Appellant in his brief concern regulatory interpretation. They have, you know, a character as much of precedent as preclusion. Moreover, if you look to the Martin v. Wilkes decision that we cited in our brief, the court stated joinder as a party rather than knowledge of a lawsuit and an opportunity to intervene is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree. The mere fact that they knew is irrelevant because they did not make themselves party. Therefore, they cannot be held to this judgment. Moreover, even if, once we get past this issue of whether or not that Tennessee judgment is binding, there is ample evidence showing that the decision the district court made on title was correct. The 2008 contract between Mr. Johnson and Mr. Moss clearly contemplates future delivery. It talks about delivery will happen. It sets it out as a future event, not something that happens at the time the contract is signed. As per 47-2-401 of the Tennessee code, title passes at the time of physical delivery. Because this never occurred, title never passed. In fact, Mr. Moss's Tennessee pleadings state that Johnson never delivered the guitar. Mr. Moss is asking us to disregard what the February 2008 contract says in favor of an oral side agreement that doesn't match the evidence. In Tennessee, as everywhere else, you can't use parole evidence to vary the terms of contract. Moreover, even assuming that, okay, let's assume that, yes, leaving at the museum was somehow delivery.  The contract triggered a requirement to pay. And it is clear that Mr. Moss never paid the second payment on that contract. And if we're looking to the parole evidence, there is a handwritten exhibit that actually indicates the $50,000 remaining payment correlates to the prices for the two remaining guitars, including the Elvis guitar at issue here. Mr. Johnson never delivered, Mr. Moss never paid, and title never passed. Finally, even if the court were to reverse on the issue of title, there are a number of remaining issues that should be remanded to the district court for decision. The buyer in the ordinary course of business argument, the good faith purchaser argument, and then the issues of estoppel, waiver, and assumption of the risk. It is generally the rule that if the district court doesn't rule on all the issues following a bench trial, remand is appropriate, especially when the remaining issues are fact-intensive. Let me ask you a question that's relevant to that. Even if the district court was right about when the legal title passed, I wonder why Mr. Moss's specific performance right wouldn't be an equitable title that might be binding on the museum. Well, the problem is— If, of course, that title wouldn't be good if the museum was a bona fide purchaser and paid value and so forth, but why isn't that—the equitable title seems to have been totally lost here, the one created by the contract itself. Since this was a unique good and there was a right claimed for specific performance, not merely damages, that creates an equitable title in the purchaser, and so why wouldn't the museum have taken titles subject to it, subject to their defenses, of course, under the bona fide purchaser title doctrine? There are two reasons for that, Judge. First of all, the order of specific performance is between Mr. Moss and Mr. Johnson based on the contract between Mr. Moss and Mr. Johnson. There's been no order of specific performance as against the museum. It doesn't have to be. If he's got that right, it's—the doctrine of equitable conversion would give him—it's just his—there doesn't have to be a pre-existing order of specific performance. He has a specific performance right under the contract that is a kind of equitable title. But the equitable— He doesn't have to have a—he doesn't have to have had an order of specific performance. Again, any such right, unfortunately for Mr. Moss, post-dated the transfer to the museum. And in any event— It was created by the contract between—of sale. Actually, when it comes to the issue of the contract of sale, I believe we are on the point where Mr. Moss argues, look, Mr. Johnson here converted this guitar, but he didn't convert it. A breach of contract is not a theft. A breach of contract is not a conversion. I agree with that. I don't think it was a conversion. Anyway, this was not an issue that was raised. It was something that was curious to me. You were talking about first-year property. I was a first-year property teacher, so that's the reason I brought the subject up. Thank you. As to the question of whether or not the museum gave value for this transfer, that's—number one, that's a fact issue. You know, very dependent, as the district court said in its denial of the summary judgment motions, I need to know more about this. It concerns the credibility of the museum's witnesses and also the question of whether Mr. Johnson would have just handed the Elvis guitar to the museum if the rest of the deal had fallen through. On the issue of, as we've previously discussed, why this cannot be treated as a conversion. So, what remains is on the question of buyer in the ordinary course of business. I know he didn't bring this up in his direct argument, but Mr. Moss has argued that it doesn't count as an entrustment under the law because he didn't believe Mr. Johnson  Even if we take the argument seriously that, yes, despite what it says in the contract, he left the guitar in Mr. Johnson's control by having it left in the Rock and Soul Museum, that's exactly what entrustment is. You are leaving somebody else in charge of the property. Moss couldn't have retrieved that guitar if he wanted to. The record demonstrates that the Rock and Soul Museum had no idea he had an interest contractual otherwise in this guitar. So, under the contract and under the principle of entrustment, Mr. Johnson had every right to remove that guitar from the museum. Again, these are fact-intensive issues that, if the court decides to reverse, should be passed on to the district court, which was closest to the facts. Thank you. And if the court has no further questions, I will cede the floor to my opponent. Very well. Thank you for your argument. I'm going to respond briefly. We all know the court speaks through its orders. The transcript is a transcript. The court's order is the court's order. I've already spoken to the dicta argument, and I think the court understands my position. But basically, what I find is unusual, the rights between Moss and Johnson were litigated in Tennessee. And I submit that the South Dakota court has to take that finding as it is. I don't think that that court can come in and undo what the Tennessee court did, and that was they found that Moss had title. So, if you move Moss to South Dakota with title, it's a totally different outcome. And that's where I believe the court's in error. Thank you. Very well. The case is submitted, and we will take it under consideration.